UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DESIREE MATTSSON, an individual,

                Plaintiff,

-v-

PAT MCGRATH COSMETICS LLC, SEPHORA USA, INC. SEPHORA.COM, INC., BERGDORF GOODMAN, LLC, BERGDORFGOODMAN.COM LLC, SELFRIDGES RETAIL LIMITED, and JOHN DOES 1-10,

                Defendants.

CIVIL ACTION NO.: 21 Civ. 5187 (JSR) (SLC)

**OPINION AND ORDER**

**SARAH L. CAVE**, United States Magistrate Judge.

## I. INTRODUCTION

Before the Court is Defendants'[1] motion to bifurcate the liability and damages portions of this copyright infringement action, which arises from the alleged unauthorized use of a photograph. (ECF No. 93 (the "Motion")). For the reasons set forth below, the Motion is DENIED.

## II. BACKGROUND

### A. Factual Background

The Court draws the following summary of the factual background of this action from the Third Amended Complaint (ECF No. 53 ("TAC")), the truth of which the Court presumes for purposes of the Motion at this stage of the proceedings.

---

[1] Defendants includes Pat McGrath Cosmetics LLC ("PMG"), Sephora USA, Inc. ("Sephora"), Bergdorf Goodman, LLC ("Bergdorf"), and Selfridges Retail Limited ("Selfridges"). (ECF No. 93 at 5). Defendants represent that Sephora.com, Inc. and BergdorfGoodman.com, LLC, which are also named as Defendants, "are non-operating entities and should be removed from the caption[,]" (id.), which the Court cannot do absent a stipulation signed by all parties, including Ms. Mattsson. See Fed. R. Civ. P. 41(a)(1).

1. **The Parties**

Plaintiff Desiree Mattsson ("Ms. Mattsson"), a citizen of Norway, is a professional fine art photographer whose photographs have been published internationally in Vogue, British Vogue, Vanity Fair, and Elle US, among others. (ECF No. 53 ¶¶ 1, 5). Defendant PMG is a New York limited liability company that sells cosmetics and related products on its own website and through Defendants Sephora, Bergdorf, and Selfridges (Sephora, Bergdorf, and Selfridges, the "Retail Defendants"). (Id. ¶¶ 7, 9, 11, 12).[2]

2. **The Fly Face Image**

In December 2016, Ms. Mattsson photographed for inclusion in her portfolio the face of fashion model Malin Kvande, wearing makeup applied by Linda Wickmann and bearing the images of two iridescent flies on Ms. Kvande's cheek and mouth (the "Fly Face Image"). (ECF No. 53 ¶ 14 & Ex. A). On or about December 16, 2016, Ms. Mattsson uploaded the Fly Face Image to her Instagram account. (ECF No. 53 ¶ 15 & Ex. C (the "Instagram Post")). Ms. Mattsson alleges that the Fly Face Image, of which she is the sole author and owner, is a pictorial work eligible for protection under the Copyright Act, 17 U.S.C. § 101 et seq. (ECF No. 53 ¶¶ 16–17 & Ex. D-1). On February 6, 2020, the United States Copyright Office granted a copyright registration to the Fly Face Image, identifying Ms. Mattsson as its author and original copyright claimant. (ECF No. 53 ¶ 18 (the "Copyright")). The version of the Fly Face Image deposited with the Copyright Office shows the flies as gold instead of iridescent, as they appear in the original Fly Face Image in the Instagram Post. (Id.).

---

[2] Ms. Mattsson originally named as a Defendant Amazon.com, Inc., against whom she later voluntarily dismissed her claims without prejudice. (ECF Nos. 53 ¶ 10; 72). Not at issue in the Motion are Defendants John Does 1-10, who allegedly purchased goods from PMG and resold them. (ECF No. 53 ¶¶ 8, 13).

On December 31, 2016, PMG posted the Fly Face Image on its Instagram account, tagging Ms. Mattsson's Instagram account. (ECF No. 53 ¶ 20 & Ex. E). On April 18, 2017, PMG contacted Ms. Mattsson via email, attaching her Instagram Post, to inquire whether she owned the rights to the Fly Face Image and whether it would be available for use on upcoming PMG packaging. (ECF No. 53 ¶ 21). Following negotiations, on April 27, 2017, PMG emailed Ms. Mattsson a "final agreement," which her representative signed on her behalf and returned to PMG the next day. (ECF No. 53 ¶¶ 22–23). PMG also provided Ms. Mattsson with a document entitled "Image Usage Rights," which appears to have Ms. Mattsson's signature but not PMG's, and provides that PMG was to pay Ms. Mattsson "a one-time license fee of $1000.00" to use the Fly Face Image for "commercial product packaging." (ECF No. 53 ¶¶ 24, 35 & Ex. F (the "IUR")). Ms. Mattsson alleges that PMG never countersigned, and never provided her with a countersigned, "final agreement" or IUR, and never made the $1000 payment contemplated in the IUR. (ECF No. 53 ¶¶ 25, 27–29). Accordingly, Ms. Mattsson alleges, "[t]he IUR was void ab initio for lack of consideration[,]" and PMG's subsequent uses of the Fly Face Image "exceeded the scope of any permitted uses, and thus were infringing." (ECF No. 53 ¶¶ 30–31).

### 3. PMG's Allegedly Infringing Uses

In an article dated August 15, 2017, Elle Magazine reported that PMG was launching a new makeup collection, the packaging for which used the Fly Face Image with the flies colored in gold. (ECF No. 53 ¶ 33). In October 2017, PMG posted on Instagram an image of its new product, "Mothership II (Sublime)," with the Fly Face Image again with the flies in gold, credited to Ms. Mattsson's Instagram account. (Id. ¶ 34). Ms. Mattsson alleges that this represents PMG's use of the Fly Face Image on "primary" product packaging, a right that she did not grant to PMG in

3

their negotiations or in the IUR, and therefore, it exceeds the scope of any license she may have granted. (Id. ¶ 35).

Ms. Mattsson alleges that "PMG operated from the start as if it had purchased and paid for the right to use the Fly Face Image for all 'commercial activities,'" which were rights that PMG requested in an early draft of the IUR but she did not grant. (ECF No. 53 ¶ 36). She attaches to the TAC additional examples of PMG's infringing uses of the Fly Face Image, including in packaging for its 2021 "Mothership" product lines. (ECF No. 53 ¶¶ 39–40, 73–74 & Exs. G-1 to G-5, H). Ms. Mattsson describes her efforts to advise PMG that its uses exceeded the scope of any agreement between the parties and request compensation for those uses, and alleges that, despite the expiration of the IUR on April 28, 2019, PMG continued and expanded its unauthorized uses, including, for example, as its profile photo on one of its Instagram pages. (ECF No. 53 ¶¶ 41–78). Ms. Mattsson alleges that PMG's infringing uses occur "throughout the world." (Id. ¶ 79).

### A. Procedural Background

On June 10, 2021, Ms. Mattsson filed her original complaint, naming as defendants PMG and Pat McGrath Ltd. (ECF No. 1). On June 17, 2021, Ms. Mattsson filed a first amended complaint, adding as defendants Sephora, Bergdorf, and Selfridges, as well as their website addresses, and John Does 1-10. (ECF No. 17). On June 30, 2021, Ms. Mattsson filed a second amended complaint. (ECF No. 32 (the "SAC")). On August 17, 2021, after PMG filed a motion to strike the SAC, with the Court's permission and PMG's consent, Ms. Mattsson filed the TAC. (ECF Nos. 50–53).

1. **TAC**

Ms. Mattsson asserts three claims in her TAC:  (i) for copyright infringement against PMG,[3] in violation of 17 U.S.C. §§ 106, 501; (ii) for copyright infringement against the Retail Defendants and John Doe Defendants, in violation of 17 U.S.C. §§ 106, 501; and (iii) for a declaratory judgment that the IUR is voidable as against all Defendants under 28 U.S.C. § 2201 and N.Y. C.P.L.R. § 3001.  (ECF No. 53 ¶¶ 81–106).  Ms. Mattsson seeks a declaration that Defendants have infringed her copyright in the Fly Face Image, statutory damages, actual damages, enhanced damages, attorneys' fees and costs, and pre-judgment interest.  (ECF No. 53 at 41–42).

2. **Answers and Counterclaims**

In its Answer to the TAC, PMG alleges that Ms. Mattsson "profited hundreds [sic] of thousands of dollars financially, and drew significant personal and professional benefit" from her relationship with PMG.  (ECF No. 66 at 1).  PMG contends that, despite these benefits, Ms. Mattsson demanded more payment from PMG following media reports "that PMG had received private funding valuing the company at significant sums[.]"  (Id.)  While admitting that Ms. Mattsson obtained the Copyright, PMG contends that it conceived of and collaborated in "the transformation of the flies from realistic and iridescent to jewelry-like and golden"—which it calls the "Golden Fly Face Image"—and therefore, the Copyright is invalid and does not pertain to the Fly Face Image.  (Id. ¶¶ 18, 23).  PMG alleges that it is "the owner of the Golden Fly Face [I]mage under the clear and unambiguous terms of the Service Agreement" dated May 25, 2017 and executed by Ms. Mattsson.  (Id. ¶¶ 38–40).

---

[3] The TAC no longer names Pat McGrath Ltd. as a Defendant.  (ECF No. 53).

As defenses to Ms. Mattsson's claims, PMG asserts that her claims are barred by the statute of limitations in 17 U.S.C. § 507(b), that she failed to timely register the Fly Face Image with the Copyright Office as required by 17 U.S.C. § 412, and that she granted PMG an explicit or implicit license. (ECF No. 66 at 24–25). PMG also asserts three counterclaims against Ms. Mattsson: (i) declaratory judgment that PMG owns the Golden Fly Face Image; (ii) declaratory judgment of invalidity of the Copyright; and (iii) declaratory judgment that PMG's uses of the Golden Fly Face Image are non-infringing. (ECF No. 66 at 39–42 (the "Counterclaims")). The Retail Defendants also filed answers to the TAC, asserting the same affirmative defenses as PMG, but not asserting any counterclaims. (ECF Nos. 83; 85; 89).

On October 22, 2021, Ms. Mattsson dismissed without prejudice her claims against Amazon.com, Inc. (ECF No. 72).

### 3. Motion Practice

On December 20, 2021, Defendants filed the Motion. (ECF No. 93). Three days later, PMG filed a motion for bond, requesting the Court impose a $550,000 bond on Ms. Mattsson "as security for costs in this action." (ECF No. 96 at 1 (the "Bond Motion")). On December 28, 2021, the undersigned was designated as the Magistrate Judge for this action, and the Honorable Alison J. Nathan referred the matter for general pre-trial supervision. (ECF No. 102; ECF min. entry Dec. 28, 2021). On January 14, 2022, Ms. Mattsson filed her memoranda of law in opposition to the Motion (ECF No. 109 (the "Opposition")), and in opposition to the Bond Motion. (ECF No. 108). On January 26, 2022, Defendants filed their reply memorandum of law in support of the Motion (ECF No. 112 (the "Reply")), and PMG filed a reply in support of the Bond Motion. (ECF No. 113). On February 2, 2022, Ms. Mattsson filed a motion for judgment on the pleadings

as to PMG's Counterclaims, (ECF No. 120 (the "MJP")), which PMG opposed on February 16, 2022, and as to which Ms. Mattsson filed a reply on February 23, 2022. (ECF Nos. 127; 130).

On March 1, 2022, Judge Nathan referred the Motion, Bond Motion, and MJP to the undersigned. (ECF No. 133). On March 30, 2022, the Court granted the parties' motion to stay pending settlement discussions, and set deadlines for the completion of fact and expert discovery as July 25, 2022 and September 2, 2022, respectively. (ECF No. 140).

On April 10, 2022, the action was reassigned to the Honorable Jed S. Rakoff. (ECF min. entry Apr. 10, 2022; ECF No. 141). Following a telephonic status conference on April 29, 2022, Judge Rakoff maintained the referral of the Motion, Bond Motion, and MJP to the undersigned, withdrew the reference for general pre-trial supervision, and granted the parties' motion for referral for a settlement conference before another Magistrate Judge. (ECF No. 141). On May 5, 2022, Judge Rakoff entered a case management plan providing that the case be trial ready by October 17, 2022, and setting, among other pre-trial deadlines, August 26, 2022 for completion of all depositions. (ECF No. 146). On May 16, 2022, the Honorable Katharine H. Parker conducted a settlement conference with the parties, but they did not reach an agreement. (ECF No. 144; ECF min. entry May 16, 2022).

### III. DISCUSSION

#### A. Legal Standards

Defendants ask the Court to "bifurcate the liability and damages phases of this action." (ECF No. 94 at 6). Federal Rule of Civil Procedure 42(b) provides:

> For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial.

7

Fed. R. Civ. P. 42(b).

Courts in the Second Circuit recognize that "[j]urors are generally entitled to hear all of the evidence in one proceeding and deliberate as to all of the issues in the case at the same time." Falzon v. Johnson, No. 12-CV-674 (CLP), 2016 WL 11430072, at *2 (E.D.N.Y. Oct. 24, 2016). "A single trial 'tends to lessen the delay, expense and inconvenience to all concerned, and the courts have emphasized that separate trials should not be ordered unless such a disposition is clearly necessary.'" Intersong-USA Inc. v. CBS, Inc., No. 84 Civ. 998 (JFK), 1985 WL 441, at *2 (S.D.N.Y. Mar. 21, 1985) (quoting Wolens v. F.W. Woolworth Co., 29 Fed. R. Serv. 2d 1521, 1521 (N.D. Ill. 1980)). Thus, "bifurcated trials are generally disfavored and 'remain the exception rather than the rule.'" Farghaly v. Potamkin Cadillac-Buick-Chevrolet-Geo, Ltd., No. 18 Civ. 11106 (AJN), 2021 WL 4267656, at *1 (S.D.N.Y. Sept. 20, 2021) (quoting Bowers v. Navistar Int'l Transp. Corp., No. 88Civ. 8857 (SS), 1993 WL 159965, at *1 (S.D.N.Y. May 10, 1993)); see L-3 Commc'ns Corp. v. OSI Sys., Inc., 418 F. Supp. 2d 380, 382 (S.D.N.Y. 2005) (noting that bifurcation is the "exception"). A party seeking bifurcation accordingly "bears the burden of establishing that separate trials will further convenience or avoid prejudice." Ferrante v. Metro-N. Commuter R.R., No. 06 Civ. 4447 (PKL), 2007 WL 1793447, at *2 (S.D.N.Y. June 18, 2007).

Bifurcation rests "well within the discretion of the trial [court]." Vichare v. AMBAC Inc., 106 F.3d 457, 467 (2d Cir. 1996). "Bifurcation of liability and damage issues has been ordered to promote convenience or avoid undue prejudice." Intersong-USA, Inc., 1985 WL 441, at *4. "Courts have generally considered the following factors, among others, in determining whether bifurcation is appropriate: 'whether bifurcation is needed to avoid or minimize prejudice, whether it will produce economies in the trial of the matter, and whether bifurcation will lessen

8

or eliminate the likelihood of juror confusion.'" Mensler v. Wal-Mart Transp., LLC, No. 13 Civ. 6901 (JCM), 2015 WL 7573236, at *2 (S.D.N.Y. Nov. 24, 2015) (quoting Crown Cork & Seal Co. Master Ret. Tr. v. Credit Suisse First Boston Corp., 288 F.R.D. 335, 337 (S.D.N.Y. 2013)); see Amato v. City of Saratoga Springs, N.Y., 170 F.3d 311, 316 (2d Cir. 1999) (listing similar factors); see also FragranceNet.com, Inc. v. FragranceX.com, Inc., No. CV-06-2225 (JFB) (AKT), 2007 WL 9710244, at *2 (E.D.N.Y. Aug. 28, 2007) (same and collecting cases).

### B. Application

The Court finds that bifurcation of the liability and damages phases would not serve the interests of promoting convenience or avoiding undue prejudice in this case, and therefore, is not appropriate. See Intersong-USA, Inc., 1985 WL 441, at *2.

First, this case is not exceptional, but rather a dispute over a single copyrighted photograph, the type of case with which courts in this District are very familiar. Cf. McDermott v. NYFireStore.com, Inc., No. 18 Civ. 10853 (AJN) (SLC), 2021 WL 952455, at *5 (S.D.N.Y. Jan. 15, 2021) (noting thousands of photograph copyright infringement actions filed in this District). Defendants rely on copyright cases outside this Circuit in which courts have granted motions to bifurcate (ECF Nos. 94 at 10; 112 at 13), but fail to distinguish the copyright case in this District in which the court denied bifurcation. See Intersong-USA, Inc., 1985 WL 441, at *2–4. The one copyright action Defendants cite in which a court in this District bifurcated liability and damages did not analyze the bifurcation factors, but nevertheless involved a much more complicated analysis of hours of video footage the plaintiff had taken on and in the days after September 11, 2001 and licensed to CBS, who subsequently used and sub-licensed the footage to other defendants over a period of years. See Fioranelli v. CBS Broad. Inc., 551 F. Supp. 3d 199, 209–19

(S.D.N.Y. 2021). Similarly, Defendants' reliance on patent or copyright infringement cases where liability involved complicated technical or engineering issues (ECF No. 94 at 12, 14–15), are inapposite in this case involving one photograph, where liability will be determined by straightforward documentary evidence of the Copyright, the parties' communications, and the witnesses' recollections.

Second, "'bifurcation would not save significant court resources' but instead could 'prolong the trial'" at a time when the Court is continuing to work through a back-log of trials that have been delayed due to the COVID-19 pandemic. Farghaly, 2021 WL 4267656, at *1 (quoting McLeod v. Llano, No. 17-CV-6062 (ARR), 2021 WL 1669732, at *3 (E.D.N.Y. Apr. 28, 2021)); see Palin v. New York Times Co., No. 17 Civ. 4853 (JSR), 2022 WL 599271, at *1 (S.D.N.Y. Mar. 1, 2022) (noting delays resulting from "constraints arising from the COVID-19 pandemic"); see also Emeterio v. A&P Rest. Corp., No. 20 Civ. 970 (KHP), 2022 WL 274007, at *7 (S.D.N.Y. Jan. 26, 2022) (noting "current COVID-19 public health crisis and resulting delays"). While it may be true, as Defendants argue, that bifurcation might eliminate the need for the jury to consider some of Ms. Mattsson's damages theories (ECF No. 94 at 16), the Court finds that "eliminating certain claims from the jury trial would not necessarily decrease the amount of evidence presented," because liability as well as Ms. Mattsson's damages will depend on similar evidence regarding PMG's use of the Fly Face Image, the products on which the Fly Face Image appeared, how PMG advertised those products, and the extent of PMG's sales of those products through its own website and through the Retail Defendants. (See ECF No. 53 ¶¶ 33–42, 60–64, 70–80). To the extent that Defendants' Motion represents an implicit request for a stay of all damages discovery, (ECF No. 94 at 17 ("Bifurcating the liability and damages phases will avoid all Parties

from having to take discovery and prepare damages analyses covering every possible permutation of the jury's liability findings . . .")), it is manifest, from the pre-trial schedule Judge Rakoff has imposed in this case, with discovery completed by the end of August 2022, that there is no stay in this case. (ECF No. 146).

Third, "bifurcation is unlikely to aid juror comprehension." Farghaly, 2021 WL 4267656, at *2. As in Intersong-USA, Inc., a copyright infringement action in which the court denied the defendants' motion to bifurcate, "the liability and damage issues are neither so distinct nor so complex as to warrant two trials." 1985 WL 441, at *2. The primary witnesses on these issues will overlap—including Ms. Mattsson, her manager, and representatives of PMG—and, as Ms. Mattsson correctly points out, PMG "controls the majority of documents and information relevant to both liability and damages." (ECF No. 109 at 7). Furthermore, Ms. Mattsson is correct that the damages analysis "is quite simple"—the primary question being the extent to which she "is entitled to profits of the five Mothership product lines at issue in this case, minus any licensed use in the two year period of the license." (Id. at 22).

Third, any potential prejudice to Defendants resulting from what they describe as Ms. Mattsson's "boundless requests" for discovery (ECF No. 94 at 10), can be mitigated by conferences between the parties to narrow those requests, and, if necessary, requesting conferences with the Court. (See ECF No. 141). And, as the Retail Defendants acknowledge, PMG has indemnified them in this action, further mitigating the imposition and costs of discovery on the Retail Defendants. (ECF No. 149). In contrast, Ms. Mattsson, "an individual with fewer resources than the Defendants[,]" would be prejudiced by having "to incur the costs of two separate trials and two separate discovery periods, which would take much longer than a single

trial . . . ." (ECF No. 109 at 23–24).  At a minimum, Defendants have not shown that the balance of any prejudice tips in their favor as would warrant reversing the presumption of a single trial.  See Farghaly, 2021 WL 4267656, at *1 (describing bifurcation as the "exception") (citation omitted).

Accordingly, having considered the factors courts in this District deem pertinent to bifurcation, the Court finds that bifurcation would neither promote convenience to the Court and the parties nor avoid undue prejudice, and therefore, is not appropriate in this case.

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to bifurcate the liability and damages phases of this action is DENIED.  The Clerk of the Court is respectfully directed to close ECF No. 93.

Dated:    New York, New York
          May 25, 2022

                                    SO ORDERED.

                                    _____
                                    SARAH L. CAVE
                                    United States Magistrate Judge